QUINTANA RACING PARK, INC., demandante y apelante, *v.* RAFAEL SANCHO BONET, en su carácter de TESORERO DE PUERTO RICO, demandado y apelado.

Núm. 7412.—*Sometido:* Febrero 2, 1938. *Resuelto:* Julio 13, 1938.

*Bolívar Pagán,* abogado de la apelante; *Hon. Procurador General B. Fernández García* y *C. Andréu Ribas, Subprocurador General Auxiliar,* abogados del apelado.

EL JUEZ ASOCIADO SEÑOR WOLF emitió la opinión del tribunal.

En noviembre 4 de 1934 se celebraron varias carreras en el hipódromo Quintana, perteneciente al demandante, Quintana Racing Park, Inc. En dicho día y de conformidad con la Ley Hípica de Puerto Rico (Ley núm. 11 de 1932, Leyes de 1931–1932, pág. 195), se celebró también en relación con esas carreras lo que se conoce con el nombre de *subscription fund.* Deogracias Viera Rodríguez, que para aquel entonces era presidente de dicha corporación, fué designado "Registrador Oficial." Dicho nombramiento fué aprobado por la Comisión Hípica Insular. Para el referido *subscription fund* se vendieron 33,588 boletos. En la faz de cada boleto se hizo constar que el valor del mismo era 72 centavos y que la comisión del agente sería de 28 centavos.

El Colector de Rentas Internas de Río Piedras impuso en 5 de diciembre de 1934 al Quintana Racing Park, Inc., una contribución de $2,653.46, o sea el 10 por ciento del 75 por ciento de 33,588 boletos a un dólar, y otros cargos que no están aquí en disputa. El demandante pagó dicha suma bajo protesta e instó demanda contra el Tesorero de Puerto Rico ante la Corte de Distrito de San Juan para obtener la devolución de dicha contribución. La corte de distrito resolvió en favor del Tesorero y declaró sin lugar la demanda. De esta decisión el demandante, Quintana Racing Park, Inc., apeló y señala cuatro errores, así:

"1. La corte inferior incurrió en error al resolver que era la demandante la obligada a retener el importe de la contribución por concepto de arbitrio del 'subscription fund' del 4 de noviembre de 1934, y pagar dicho arbitrio al Tesorero de Puerto Rico, y no el agente registrador de dicho 'subscription fund', Deogracias Viera Rodríguez.

"2. La corte inferior incurrió en error al resolver que la demandante venía obligada a pagar $2,653.46 al Tesoro Insular por los referidos arbitrios, y no $1,813.75 de acuerdo con el dinero recibido por el registrador del fondo.

"3. La corte inferior incurrió en error en la apreciación de la evidencia practicada por la demandante.

4. La corte inferior incurrió en error al dictar sentencia declarando sin lugar la demanda."

El apelante, en apoyo de su primer señalamiento, sostiene que el Quintana Racing Park, Inc., no estaba obligado a pagar la contribución del *subscription fund,* y que por el contrario Deogracias Viera Rodríguez, el "Registrador Oficial," era el llamado a efectuar tal pago. En apoyo de este argumento el demandante insiste en que el artículo 29 de la Ley Hípica (núm. 11 de abril 18, 1932, Leyes de ese año, página 195) no dice que el dueño de un hipódromo esté obligado a cumplir con los deberes que recaigan sobre la persona encargada del *subscription fund.* El demandante arguye además que las personas que tenían el dominio absoluto del fondo eran el "Registrador Oficial" y la Comisión Hípica Insular y que no podía retirarse de los bancos fondo de clase

alguna sin la autorización de ambos. Sin embargo, el párrafo 3 de la Ley núm. 11 de la tercera sesión extraordinaria de 1932, página 51, lee así:

"*Pools y Subscription Funds.*—Toda persona que perciba u obtenga cualquier cantidad como ganancia en los *Pools y Subscription Funds* en cualquier hipódromo establecido en Puerto Rico, pagará en concepto de arbitrios diez (10) por ciento del montante de la cantidad percibida, recibida u obtenida. Este impuesto será retenido por la persona, compañía o corporación a cargo de la explotación del hipódromo, deduciéndola del montante que deberá percibir u obtener el agraciado, la cual cantidad deberá ser pagada dentro de los tres días siguientes a la fecha en que se hayan efectuado tales pagos y mediante la cancelación de sellos de rentas internas sobre facturas que proveerá el Tesorero de Puerto Rico; . . ."

La obligación de retener la contribución impuesta sobre las ganancias obtenidas en el *subscription fund* se fija por tanto claramente a la persona, compañía o corporación encargada de la explotación del hipódromo, y toda vez que el Quintana Racing Park, Inc., era dicha corporación, él es, en su consecuencia, la persona directamente responsable por ley del pago de dicha contribución. El primer supuesto error señalado por el apelante carece por ende de fundamento.

Como segundo error el apelante sostiene que la contribución impuesta debió haber sido $1,813.75, en vez de $2,653.46. Para sostener esta asunción, el apelante alega que el valor del boleto era en realidad 72 centavos, concediéndose los otros 28 centavos al agente como comisión por la venta del mismo. En otras palabras, que tan sólo 72 centavos del precio pagado por el boleto ingresaban en el fondo, del cual más tarde se pagaban los premios. El apelante cita el inciso 3 de la Ley núm. 11, tercera sesión extraordinaria de 1932. Dicho inciso prescribe lo siguiente:

"Toda persona que perciba u obtenga cualquier cantidad como ganancia . . . pagará en concepto de arbitrios diez (10) por ciento del montante de la cantidad percibida . . . *Y, disponiéndose, además,* que el montante recaudado por el impuesto del diez (10) por

ciento sobre la cantidad a repartir por concepto de premios deri-
vados del producto de la venta de .tickets suscritos al 'subscription
fund' . . .''

Por tanto, es evidente que la contribución del 10 por
ciento es un impuesto sobre las ganancias.

El artículo 29 de la Ley núm. 11 de 1932 (Leyes de 1931–
1932), págs. 195, 211, dispone:

''En los hipódromos de Puerto Rico se descontará . . . el veinte
y cinco (25) por ciento del total bruto o de las apuestas que se crucen
en el *pool, subscription funds* o *mutuels*. El total bruto que se de-
rive por concepto de dichos descuentos deberá ser distribuído en la si-
guiente forma: ochenta y cinco (85) por ciento para la corporación
explotadora del hipódromo y quince (15) por ciento para los fondos
de la Comisión Hípica Insular.''

En su consecuencia, la comisión que el Quintana Racing
Park, Inc., paga a sus agentes por la venta de boletos debe
deducirse del 85 por ciento del 25 por ciento del total bruto
de las apuestas entregadas a la corporación, toda vez que
dicha comisión constituye un gasto de explotación. El otro
75 por ciento del total bruto ingresa en el fondo del cual se
pagan las ganancias, y es esta última suma a la cual se im-
pone una contribución del 10 por ciento. La regla núm. 3
adoptada por la Comisión Hípica Insular lee así:

''Los boletos debidamente numerados serán vendidos al precio
que se estipule en los mismos, debiendo ingresar en el 'fondo' el im-
porte que se obtuviere de dicha venta, debiéndose especificar en cada
boleto, además del valor del mismo, la comisión que deberá percibir
la persona encargada de su venta. En el caso de que el boleto se
fraccionase para su mayor difusión, deberá llenarse el anterior requi-
sito en cada una de dichas fracciones.''

Esta regla no altera el valor del boleto, según alega el
apelante, de un dólar, valor efectivo, a 72 centavos. El ape-
lante alega que del precio del boleto, 72 centavos es la suma
que va a poder del ''Registrador Oficial,'' puesto que el
agente retiene su comisión y la misma, por tanto, no perte-

nece al fondo. La regla 3 de la Comisión Hípica Insular expone claramente que el boleto será vendido al precio fijado en el mismo y que la suma obtenida de dicha venta ingresará en el fondo. Luego dice que la comisión pagada al agente también aparecerá impresa en el boleto. Aun si esta regla fuera contraria a los términos del artículo 29 de la Ley núm. 11 de 1932, este último sería aplicable, toda vez que la Comisión Hípica Insular en ningún momento puede modificar la ley adoptando una nueva regla. La corte de distrito no cometió el segundo error señalado por el apelante.

Como tercer señalamiento el apelante sostiene que la corte de distrito cometió error al apreciar la prueba del demandante. El apelante insiste en que él nada tiene que ver con la administración del fondo y que la única persona que tenía el dominio absoluto y la administración del *subscription fund* y el manejo del fondo era el "Registrador Oficial," con la intervención del presidente de la Comisión Hípica Insular. También sostiene que la prueba demuestra que el valor de cada boleto era 72 centavos y no un dólar, ya que la comisión pagada no formaba parte del fondo. No vemos que la corte de distrito cometiera error alguno, toda vez que en lo que al valor del boleto se refiere, la Ley Hípica directamente cubre el punto y en su consecuencia ello no es una cuestión de evidencia sino de interpretación estatutaria.

El cuarto señalamiento del apelante es que la corte de distrito cometió error al desestimar la demanda. Como la contribución fijada por el Colector de Rentas Internas de Río Piedras fué correctamente impuesta, la corte de distrito no cometió error al declarar sin lugar la demanda.

*Debe confirmarse la sentencia apelada.*

El Juez Asociado Señor De Jesús no intervino.